## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 17-24484-Civ-Scola

DARIANA MIZRAHI,

        Plaintiff,

vs.

YAMAHA MOTOR CORPORATION, U.S.A.,
and YAMAHA MOTOR CO., LTD.,

        Defendants.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## YAMAHA'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Dariana Mizrahi hereby responds in opposition to Defendants' Motion for Summary Judgment [ECF No. 29].

### SUMMARY OF ARGUMENT

**Failure to Warn Claims.** Summary judgment should be denied on Plaintiff's failure to warn claims (strict liability and negligence), because both the adequacy of the warnings and proximate cause are questions of fact for the jury to resolve. In addition, Plaintiff has supported this claim with the expert testimony of a human factors and warning expert, and Yamaha has not yet filed any *Daubert* motions, so it is premature to address the argument that the claims should be dismissed for lacking admissible expert testimony.

**Design Defect Claims.** Summary judgment should also be denied on Plaintiff's design defect claims (strict liability and negligence). Yamaha does not

argue that its personal water craft was free of any design defect, but instead argues that, because the warnings were (in its view) adequate if followed, the product should be considered non-defective. This position should be rejected as a matter of law. In addition, Plaintiff has supported this claim with the expert testimony of a human factors and warning expert, and Yamaha has not yet filed any *Daubert* motions, so it is premature to address the argument that the claims should be dismissed for lacking admissible expert testimony.

## FACTUAL BACKGROUND

### The Ride on the Yamaha WaveRunner

On January 16, 2017, Dariana Mizrahi (age 16 at the time) went for a ride with two friends on a 2013 Yamaha WaveRunner FX Cruiser HO personal watercraft (the "WaveRunner") in Biscayne Bay in the vicinity of Haulover Park. The WaveRunner was a three-seater. Dariana was the third-seat passenger; her friend N.B. was the driver; and her friend K.M. sat in the second seat. Plaintiff's Statement of Facts ("SOF") [ECF No. 31] at ¶ 54.

Dariana boarded the WaveRunner from a public dock near her house. N.B. was already on board in the driver's seat, and K.M. got on before Dariana. Dariana wore a personal flotation device for the ride. She was also wearing what she understood to be appropriate protective clothing – Dri-FIT shorts – over the top of her swimming suit. SOF [ECF No. 31] at ¶¶ 55-56. N.B., an experienced driver who had taken the Florida boating safety course, also wore a Dri-FIT swimsuit, which he likewise understood to be appropriate protective clothing. SOF [ECF No. 31] at ¶ 57.

Dariana had experience riding on personal watercraft that provided a hand strap across the seat for the passenger to hold onto. There is no hand strap on the WaveRunner. There is also no back rest behind the third seat passenger to prevent the passenger from sliding off or falling off the back. The WaveRunner does have what the Owner's Manual refers to as a handgrip, which is a molded plastic rim that runs around the back seat of the WaveRunner. The handgrip, however, is positioned behind the passenger's center of mass. SOF [ECF No. 31] at ¶ 58.

### **The Incident**

The ride out on the WaveRunner was uneventful, and N.B. stopped at a small island where the three got off and got into the water to swim. SOF [ECF No. 31] at ¶ 59. On the way back to the marina, the WaveRunner encountered a wake from a large yacht crossing its path of travel. When they encountered the wake, N.B. "wasn't going fast at all." The waves from the wake were high. SOF [ECF No. 31] at ¶ 60.

Dariana believes it was the third wave in the wake that caused her to fall off. N.B.'s recollection is that it was the first wave. SOF [ECF No. 31] at ¶ 61. The wake wave caused the WaveRunner to tip up so that Dariana's hands (which were wet from swimming) slipped off the handgrip located behind her buttocks and she fell straight back into the water with her feet open. One of her feet hit the rear platform of the WaveRunner and she landed in the water "really close" to the jet propulsion. SOF [ECF No. 31] at ¶ 62.

Dariana testified that the driver didn't even realize that she had fallen off when he sped up the WaveRunner to get over the wake. She is not sure if she fell off before the driver accelerated or after he accelerated. SOF [ECF No. 31] at ¶ 63.

The force of the jet propulsion from the WaveRunner caused the water to penetrate and puncture her rectum. She was taken by ambulance to Aventura Hospital where she underwent emergency surgery to repair her torn rectum and underwent a colectomy (removal of a portion of her colon). She spent over two weeks in Aventura Hospital. Dariana was required to wear a colostomy bag for approximately eight months following the incident and has endured multiple surgeries. Dariana missed the rest of her sophomore year of high school as a result. SOF [ECF No. 31] at ¶¶ 64-65.

**The Warnings on the WaveRunner**

There are three labels on the rear of the WaveRunner, near the platform where a passenger would put his or her feet when boarding the watercraft:



The top label is of no relevance to a passenger (having to do with lifting the watercraft). The bottom (and biggest) label is likewise of no relevance to a passenger (stating Yamaha's mailing address and providing a disclaimer). Only the middle label is relevant to a passenger and states, in its middle bullet point: "Wear a wet suit bottom or clothing that provides equivalent protection." SOF [ECF No. 31] at ¶ 66.

Dariana did not see the warnings on the subject WaveRunner before the accident.[1] SOF [ECF No. 31] at ¶ 67.

**Dariana's Shorts**

Dariana understood generally that she should wear something of equivalent protection to a wetsuit when riding a personal watercraft. As a result, Dariana wore Dri-FIT shorts *over* her bathing suit bottom. She described the Dri-FIT shorts she wore as: "really annoying"; "they're pretty thick"; "they get hot really quickly"; "they're tight shorts." The shorts were also durable, because Dariana testified: "we usually fall on our a--- when we jump, and it hurts sometimes. And they don't hurt with these shorts." As Dariana put it: "I wore these because it's the closest thing to a wetsuit." SOF [ECF No. 31] at ¶ 69.

---

[1]   Yamaha states: "Plaintiff had seen this rear label when re-boarding the PWC and when boarding on the day of the accident from the PWC's 'back side.'" Yamaha Motion at 4. This is not accurate. In the deposition lines cited by Yamaha, Dariana testified that she had "seen" (not read) the labels at the back of a Yamaha watercraft *in the past* (not the *subject* WaveRunner) after flipping off the side to go swimming and then getting back on from the water. [ECF 30-1] at 287:3-288:17. On the day of the incident, she boarded the subject WaveRunner *from a dock* and was not asked if she actually saw the rear label when boarding. [ECF 30-1] at 339:15-340:13.

### Plaintiff's Claims

Plaintiff has brought a claim for negligence (Count 1), based on both a failure to warn and design defect, and a claim for strict liability (Count 2), again based on both a failure to warn and design defect. [ECF No. 9] In support of these claims, Plaintiff has disclosed an expert report from a mechanical engineer (Brian Haygood) with extensive experience in testing personal watercraft and an expert report from a human factors and warnings expert (Dr. David Lenorovitz).

In brief, Mr. Haygood conducted testing on the subject Yamaha WaveRunner and reached the opinion that "[i]n releasing the incident 2013 Yamaha FX Cruiser HO into the market with a hazardous high-pressure jet of water directly behind the craft, while failing to provide seat straps, adequate handholds, a backrest or similar means to protect occupants from that hazard, Yamaha created an unreasonably dangerous condition . . . ." Mr. Haygood also conducted testing on a variety of neoprene wetsuit materials and concluded that a significant number failed when exposed to the high-pressure stream of water expelled by the WaveRunner's jet propulsion system. SOF [ECF No. 31] at ¶ 72.

In brief, it is Dr. Lenorovitz's opinion that the warnings on the WaveRunner are inadequate for a number of reasons, including in their placement and their failure to target the passenger, the person at most risk of suffering an orifice injury, with the necessary information.[2] He also opines that the terminology "wetsuit bottom or clothing that provides equivalent protection" is inadequate because it is ambiguous

---

[2]     Kawasaki, for example, places the warnings, directly on the back seat of its personal watercraft to be visible to the passenger. *See* Ex. K (Kawasaki Owner's Manual).

6

to a lay consumer (and notes that Yamaha and other manufacturers use publicity photos that show female riders on or near Yamaha WaveRunners wearing only a bikini or swimsuit). SOF [ECF No. 31] at ¶ 73.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co.,* 894 F.2d 1555, 1558 (11th Cir. 1990).

## ARGUMENT

## I.   SUMMARY JUDGMENT IS NOT APPROPRIATE ON PLAINTIFF'S FAILURE TO WARN CLAIMS.

"Strict liability and negligent failure to warn cases boil down to three elements that Plaintiff[s] must prove: 1) that the warnings accompanying the item were inadequate; 2) that the inadequacy of the warnings proximately caused Plaintiff[s'] injury; and 3) that Plaintiff[s] in fact suffered an injury by using the product." *Colville v. Pharmacia & Upjohn Co., LLC*, 565 F. Supp. 2d 1314, 1320 (N.D. Fla. 2008) (alterations added; citations omitted).

**A.      The Adequacy of the Warnings is a Question of Fact for the Jury.**

"[T]he sufficiency and reasonableness of a manufacturer's warnings are questions of fact which are best left to the jury unless the warnings are accurate, clear, and unambiguous." *Valencia v. Sanborn Mfg. Co.,* 2005 WL 5857819, at *17 (S.D. Fla. Aug. 11, 2005) (Altonaga, J.). For purposes of responding to Yamaha's motion for summary judgment, the warnings on the subject WaveRunner were inadequate for at least three reasons: (1) they were not visible to passengers, (2) they were ambiguous on a critical matter, and (3) they were inaccurate.

**Visibility.** As to the visibility of the warnings, Yamaha points to three locations. Yamaha Motion at 11-12. First, Yamaha points to the warnings in the Owner's Manual. But it is undisputed that Dariana was not the owner of the subject WaveRunner and had not read an Owner's Manual. Nor is it reasonable to expect her as a passenger out for a recreational afternoon ride to have asked for or read the Owner's Manual before stepping off the dock. Second, Yamaha points to the warning label that is located in front of the driver under the handlebars. But this label (which primarily contains information relevant only to the driver) is not visible to a third-seat passenger like Dariana, as the photograph (on the following page) taken on the ride before the incident demonstrates:

8



Label not visible to passengers

Label not visible to passengers

<u>Third</u>, Yamaha points to the label at the rear of the WaveRunner. But this label is not visible to a third-seat rider either, and would only be in the line of sight of a passenger when they are getting back on the watercraft after having gone into the water (at which point it is too late to heed the warnings). Moreover, the warning relevant to the passenger is wedged between a label that has no relevance to the passenger (dealing with the lifting of the watercraft out of the water) and a bigger label in a bigger font with no relevant information to the passenger (Yamaha's mailing address and a disclaimer).

These types of visibility or conspicuity issues have been treated as questions of fact for a jury to decide in comparable cases. For example, In *Ruggiero v. Yamaha Motor Corporation, U.S.A.,* 2017 WL 1197755 (D.N.J. March 31, 2017), the plaintiff was a passenger on a Yamaha personal watercraft who fell off the back and suffered an injury. She brought a claim for failure to warn based on the lack of visibility of the warning labels on the PWC to a passenger.  Like the Yamaha WaveRunner ridden by Dariana, the PWC in that case "had two warning labels affixed to the watercraft that specifically addressed the risk of orifice injuries and the need to wear protective clothing. These labels were located on the handlebars (on the lid of the glove box) and at the rear of the craft (next to the rear boarding deck)." *Id.* at *1. The district court denied Yamaha's motion for summary judgment, holding that, "the jury will be able to look at, in a common sense way, whether the warnings were <u>visible and in a location where a reasonably typical passenger could see them</u>." *Id.* at *11 (emphasis added). *See also Fisher v. Bumbo Int'l Trust*, 2014 WL 12026083, at *13 (S.D. Fla. Aug. 20, 2014) (Ungaro, J.) (denying baby chair manufacturer's motion for summary judgment on a failure to warn claim because "there are questions of fact regarding whether the warnings are adequately <u>prominent and conspicuous</u>" (emphasis added)).

Yamaha relies heavily on *Pinchinat v. Graco Children's Products, Inc.*, 390 F. Supp.2d 1141 (M.D. Fla. 2005), a case in which a baby stroller manufacturer moved for summary judgment after a mother brought a claim for failure to warn and design defect after her infant's accidental death by asphyxiation while sleeping in the

stroller. The court granted summary judgment on the failure to warn claim based on explicit warnings that appeared in both the owner's manual and directly on the stroller seat. *See id.* at 1147 ("Defendant placed the warnings in conspicuous locations in the owner's manual and on the product. Plaintiff admits having possession of and referring to the owner's manual and having seen the label on the product, and that she was able to read them had she chosen.").

But the factual circumstances of that case were significantly different than the facts here. <u>First</u>, the plaintiff in *Pinchinat* was the owner of the stroller (*id.* at 1144); by contrast, Dariana did not own the personal watercraft. <u>Second</u>, the plaintiff in *Pinchinat* had the owner's manual (which contained the warnings on pages two through seven immediately following the cover page) and had referred to portions of it while assembling the stroller (*id.*); by contrast, Dariana never saw the WaveRunner Owner's Manual. <u>Third</u>, the plaintiff in *Pinchinat* admitted she had seen the label on the stroller before the incident but had not read it (*id.* at 1145); by contrast, Dariana did not see the warning label that was at the back of the subject WaveRunner (which is not surprising giving its location near a rider's feet).

**<u>Ambiguity</u>.** The labels on the subject WaveRunner were also inadequate because they were ambiguous on a critical matter. The rear label provides the warning: "Wear a wet suit bottom or clothing that provides equivalent protection." However, it provides no guidance as to what constitutes or is meant by "clothing that provides equivalent protection." Dariana was an experienced rider of personal watercraft, and her friend N.B. was an experienced driver who had taken the Florida

11

boating safety course. Both believed that Dri-FIT shorts fit the description of "equivalent protection." The instruction provides no guidance on the thickness or intended uses of an appropriate wet suit (which, after all, is typically used by consumers for warmth in cold water); nor does it provide any guidance on what materials constitute "equivalent protection." Plaintiff has also submitted the expert testimony of a human factors and warning expert regarding the inadequacy and ambiguity of this particular instruction.

**Inaccuracy.**   Finally, the labels on the subject WaveRunner are also inaccurate. They imply that wearing a wet suit bottom will protect a user from an injury due to the jet propulsion. However, Plaintiff's engineering expert, Brian Haygood, conducted testing on a variety of neoprene wetsuit materials and concluded that a significant number <u>failed</u> when exposed to the high-pressure stream of water expelled by the WaveRunner's jet propulsion system. This too creates an issue of fact as to the adequacy of the warnings.

### B.    Proximate Cause is Also a Question of Fact for the Jury.

"The question of proximate cause in a duty to warn case is an issue for the jury unless the facts are co clear that reasonable people could not differ." *Valencia v. Sanborn Mfg. Co.,* 2005 WL 5857819, at *18 (S.D. Fla. Aug. 11, 2005) (Altonaga, J.) (quotation and citation omitted).  "When the evidence is susceptible of the inference that if the product had an adequate warning, the plaintiff would have heeded it, the causation issue should be resolved by the jury." *Id.*

Yamaha argues that, because Dariana was aware from her past experience riding personal watercraft of the need to wear a wetsuit bottom or clothing providing

equivalent protection, her failure to warn claim must fail for lack of proof of causation. But Yamaha's argument dodges the question, which is whether the warnings it provided on the *subject* WaveRunner on which Dariana was grievously injured were adequate (not whether unspecified warnings on other personal watercraft, including from other manufacturers) were adequate.

In addition, Yamaha's argument begs the question of the ambiguity of its instruction regarding appropriate clothing for riders to wear. If Yamaha's instruction is ambiguous – as Plaintiff contends – then Dariana's failure to understand or follow it in the way Yamaha prefers is intertwined with the question of causation. To put it another way, the ambiguity of the instruction is one of the proximate causes of the injury. *Cf. Fisher*, 2014 WL 12026083, at *13 ("If the reasons for a plaintiff's failure to read a warning are based on the alleged inadequacies in the warning, then proximate cause is a question of fact for the jury to resolve.").

Finally, Yamaha's causation argument should only apply to Plaintiff's negligent failure to warn claim, and not her strict liability claim. *See Stanley Indus., Inc. v. W.M. Barr & Co., Inc.*, 784 F. Supp. 1570, 1573 n.2 (S.D, Fla. 1992) (Moreno, J.) ("Defendant contends that the plaintiff cannot establish proximate cause because the plaintiff failed to read the label. <u>Strict liability</u> and breach of warranty theories of recovery do not depend on conduct or failure of the parties to act. Plaintiff's alleged failure to read the label would not entitle the defendants to summary judgment on the strict liability and breach of warranty counts." (emphasis added)).

### C.    Plaintiff's Expert Testimony Supports the Existence of an Inadequate Warning.

Plaintiff will present the expert testimony of Dr. David Lenorovitz, a human factors and warnings expert who has testified as an expert witness in a wide variety of matters involving the adequacy of warnings on consumer products.  SOF [ECF No. 31] at ¶ 73. *Daubert* challenges to this type of expert testimony have been rejected in other federal lawsuits involving personal watercraft manufacturers. *See, e.g., Thomas v. Bombardier Recreational Prods., Inc.*, 2010 WL 4188308, at *5-*6 (M.D. Fla. Oct. 20, 2010) (denying *Daubert* challenge to plaintiff's warnings expert in an orifice injury case where the expert "opines that the warning label was 'imminently inconspicuous for a person who may need that information' and should have been placed on the seat where the passenger sits on the personal watercraft.").

In any event, Yamaha's argument that Plaintiff lacks sufficient expert testimony, based on its "forthcoming" *Daubert* motion, is premature. No *Daubert* motion has been filed regarding Dr. Lenorovitz's expert testimony.[3]

---

[3]    Plaintiffs will respond in due course to any *Daubert* motion that is filed, but it is also worth noting that expert testimony is not necessarily required for a failure to warn claim. *See, e.g., Salozzo v. Wagner Spray Tech. Corp.*, 578 So.2d 393, 394 (Fla. 3d Dist. Ct. App. 1991) ("While we agree that the plaintiff's proposed expert testimony was properly excluded, expert evidence was not required to permit a jury conclusion that the warnings provided were inadequate, improperly located, or both.").

## II.  SUMMARY JUDGMENT IS NOT APPROPRIATE ON PLAINTIFF'S DESIGN DEFECT CLAIMS.

### A.  Plaintiff's Design Defect Claim is Not Dependent on Her Failure to Warn Claim.

Yamaha argues that, because its warnings are adequate, the WaveRunner should not be considered defective as a matter of law. Notably, Yamaha does <u>not</u> argue that its WaveRunner is in fact free of any defect; rather, Yamaha argues that it should be absolved of any responsibility for the design of its WaveRunner because it provided what it claims to be a warning that is adequate if followed.

As an initial matter, for the reasons discussed above, Yamaha's warnings are <u>not</u> adequate as a matter of law, so the Court need not reach the arguments made by Yamaha in Part III.A of its motion for summary judgment. Regardless, as will be discussed below, the argument should be rejected as a matter of law as well.

Yamaha relies for its argument on comment j to § 402A of the Restatement (Second) of Torts (1965). Section 402A sets for the basic elements of a strict product liability claim, and comment j (which primarily discusses food products) states, in relevant part, as follows:

> *j. Directions or warning.* In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use.
>
> ***
>
> Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

RESTATEMENT (SECOND) OF TORTS § 402A, *cmt. j* (1965).

15

What Yamaha fails to mention or discuss is that the Restatement (Second) of Torts (1965) has been followed by the Restatement (Third) of Torts (1998). The more recent Restatement (Third) takes a different approach:

> *l. Relationship between design and instruction or warning.* Reasonable designs and instructions or warnings both play important roles in the production and distribution of reasonably safe products. <u>In general, when a safer design can reasonably be implemented and risks can reasonably be designed out of a product, adoption of the safer design is required over a warning that leaves a significant residuum of such risks</u>. For example, instructions and warnings may be ineffective because users of the product may not be adequately reached, may be likely to be inattentive, or may be insufficiently motivated to follow the instructions or heed the warnings. However, when an alternative design to avoid risks cannot reasonably be implemented, adequate instructions and warnings will normally be sufficient to render the product reasonably safe. <u>Warnings are not, however, a substitute for the provision of a reasonably safe design</u>.

RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY § 2, *cmt. l* (1998) (emphasis added). In other words, a legally adequate warning will not absolve a manufacturer of a defective design if the product can reasonably be made safer.

The Restatement (Third) has specifically criticized the commentary relied on by Yamaha. Specifically, the commentary to the Restatement (Third) refers to the portion of comment j on which Yamaha relies as "unfortunate language" and notes that "[t]he Comment *j* presumption has elicited heavy criticism from a host of commentators." RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY § 2, *cmt. l* (1998). As one state supreme court has observed: "Comment j § 402A of the Restatement (Second) of Torts has generated considerable comment and criticism. The Restatement reporters alone have written volumes in criticism of Comment J and support of the Restatement (Third) Comment l." *Delaney v. Deer and Co.*, 999

16

P.2d 930, 941 (Kan. 2000) (string citing commentary). "The reporters of the Restatement (Third) of Torts fault Comment j because it allows a defendant to escape liability for inadequate design by simply warning against risks." *Id.*

Yamaha cites no Florida case that has adopted comment j wholesale or applied it to dismiss a design defect claim on the grounds that adequate warnings had been provided.[4] And this Court should not become the first. In fact, in *Pinchinat v. Graco Children's Products, Inc.*, 390 F. Supp.2d 1141, 1146-47 (M.D. Fla. 2005) (the case heavily relied upon by Yamaha), the court found that the warnings provided by the manufacturer of a baby stroller were "accurate, clear and unambiguous," and granted summary judgment for the manufacturer on the failure to warn claims. But, the court treated the design defect claims independently and <u>denied</u> summary judgment on the design defect claim, regardless of the adequate warnings. *See id.* at 1148-49.

Courts in other states have specifically declined to adopt comment j of §402A. *See Delaney*, 999 P.2d at 942-43 ("[W]e decline to adopt that portion of Comment j which holds that a product bearing a warning which is safe for use if the warning is followed is not in a defective condition or unreasonably dangerous."); *see also Sheppard v. Monsanto Co.*, 2016 WL 3629074, at *10 (D.Hawaii June 29, 2016)

---

[4]   *Perez v. National Presto Indus., Inc.*, 431 So.2d 667, 669 n.3 (Fla. 3d Dist. Ct. App. 1983) cites in a footnote a <u>different</u> portion of comment j that is inapplicable here: "Comment j of the Restatement (Second) of Torts § 402A (1965) provides that 'a seller is not required to warn with respect to products or ingredients in them, which are only dangerous, or potentially so, when consumed in excess quantity, or over a long period of time, when the danger, or potentiality of danger is generally known and recognized.'" And *Cassisi v. Maytag Co.*, 396 So.2d 1140, 1144 n.4 (Fla. 1st Dist. Ct. App. 1981), which likewise cites comment j in a footnote, did <u>not</u> involve a failure to warn claim or address the warnings on the product at issue (and the court <u>denied</u> summary judgment on the design defect claim in any event).

("Moreover, almost all jurisdictions that have adopted the doctrine espoused in comments j and k [to § 402A], have narrowly limited it to pharmaceuticals or certain medical devices (and largely on a case-by-case basis)."). And, courts have instead adopted the more recent comment l from the Restatement (Third). *See Weigle v. SPX Corp.*, 729 F.3d 724, 738 (7th Cir. 2013) (denying summary judgment on design defect claim even though designer provided adequate warnings; "In general, when a safer design can reasonably be implemented and risks can reasonably be designed out of a product, adoption of the safer design is required over a warning that leaves a significant residuum of such risks.") (quoting RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY § 2, *cmt. l.*).

Yamaha relies on *Hickerson v. Yamaha Motor Corp.*, 882 F.3d 476 (4th Cir. 2018). In that case, a woman wearing only a bikini was the fourth passenger on a three-seat PWC with a ten-year-old driving. She suffered an orifice injury when she fell off the rear of the PWC. *See id.* at 479. After striking the plaintiff's warnings expert, the district court granted summary judgment on her failure to warn claim; and, applying South Carolina law, the court held that Comment j to § 402A of the Restatement (Second) shielded Yamaha from liability for product defects if the product contained an adequate warning. *See id.* at 484-85.[5]

---

[5]     Notably, the Fourth Circuit has held differently when considering the law of another state. *See Eskridge v. Pacific Cycle, Inc.*, 556 Fed. Appx. 182, 188-89 (4th Cir. 2014) (unpublished) (holding, under West Virginia law, that adequate warnings do not eliminate a design defect claim; "Comment *l* to section [of the Restatement (Third) of Torts – Products Liability] provides that '[i]n general, when a safer design can reasonably be implemented and risks can reasonably be designed out of a product, adoption of the safer design is required over a warning that leaves a significant residuum of such risks.'").

South Carolina is a state that has enacted a statutory cause of action for product liability (the South Carolina Defective Products Act). In so doing, the South Carolina legislature specifically codified § 402A of the Restatement (Second) and even adopted the commentary as the expression of its legislative intent for the Act. *See id.* at 483. Florida, by contrast to South Carolina, has a common law cause of action for strict liability and negligence involving defective products. (And, as noted, Yamaha cites no Florida case that has adopted comment j wholesale or applied it to dismiss a design defect claim on the grounds that adequate warnings had been provided.)

Finally, even if comment j of § 402A of the Restatement (Second) was applied here, summary judgment would still be inappropriate. Yamaha argues that its warnings are adequate as a matter of law because they "make the product safe for use, if followed." Yamaha Motion at 16. This, however, is a disputed issue. Yamaha's warnings direct the riders to wear "a wetsuit bottom or clothing that provides equivalent protection." Setting aside the ambiguity of what is meant by "clothing that provides equivalent protection," the testing conducted by Plaintiff's expert witness, Brian Haygood, has demonstrated that even neoprene wetsuit material can fail when exposed to the high-power jet propulsion of the WaveRunner. *See* Part II.B below. In other words, the product is not safe even if the warnings were followed.

## B.   Plaintiff's Expert Testimony Supports the Existence of a Design Defect.

Plaintiff will present the expert testimony of Brian Haygood, an engineer at System Engineering and Laboratories with extensive experience testing personal watercraft. *See* [ECF No. 31] at ¶ 72. *Daubert* challenges to this type of expert

testimony have been rejected in other federal lawsuits involving personal watercraft manufacturers (including in cases worked on by Mr. Haygood where the expert testimony was offered by a colleague at his engineering firm). *See, e.g., Sands v. Kawasaki Motors Corp. U.S.A.*, 513 Fed. Appx. 847, 851-52 (11th Cir. 2013) (unpublished) (affirming the denial of a *Daubert* motion relating to the expert testimony of Haygood's colleague regarding the need for a seatback on the personal watercraft to prevent orifice injury).

In any event, Yamaha's argument that Plaintiff lacks sufficient expert testimony, based on its "forthcoming" *Daubert* motion, is premature. No *Daubert* motion has been filed regarding Mr. Haygood's expert testimony.

### CONCLUSION

For the reasons set forth above, Yamaha's Motion for Summary Judgment should be denied.

Respectfully submitted,

COLSON HICKS EIDSON, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Tel: (305) 476-7400

By: /s/ *Curtis Miner*
      Curtis B. Miner
      Fla. Bar No. 885681
      curt@colson.com
      Denise Georges
      Fla. Bar No. 55861
      denise@colson.com

*Attorneys for Plaintiff*

20

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I HEREBY CERTIFY that the foregoing document was electronically filed on April 8, 2019 using the Court's CM/ECF system, which will cause a Notice of Electronic Filing to be delivered to all counsel listed on the below Service List.

/s/ *Curtis Miner*
CURTIS B. MINER

## SERVICE LIST

**SCOTT M. SARASON**
E-mail: ssarason@rumberger.com
(primary)
ssarasonsecy@rumberger.com
docketingmiami@rumberger.com
(secondary)
**MICHAEL R. HOLT**
E-mail: mholt@rumberger.com
(primary)
mholtsecy@rumberger.com
RUMBERGER, KIRK & CALDWELL
A Professional Association
Brickell City Tower, Suite 3000
80 S.W. 8th Street
Miami, Florida  33130-3037
Telephone:  (305) 358-5577

***Attorneys for Defendants***
***Yamaha Motor Corporation, U.S.A.***
***and Yamaha Motor Co., Ltd.***

**RICHARD A. MUELLER**
rmueller@thompsoncoburn.com
THOMPSON COBURN, LLP
505 N. 7th St.
One US Bank Plaza
St. Louis, MO 63101-1693
Telephone: (314) 552-6084

***National Counsel for Defendants***
***Yamaha Motor Corporation, U.S.A.***
***and Yamaha Motor Co., Ltd.***