United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Dariana Mizrahi, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 17-24484-Civ-Scola |
| Yamaha Motor Corporation, U.S.A. | ) |
| and Yamaha Motor Co., Ltd., | ) |
| Defendants. | ) |

### Order Denying the Defendants' Motion for Summary Judgment

Plaintiff Dariana Mizrahi seeks to recover damages for serious physical injuries she sustained when she fell off a personal watercraft—a WaveRunner—manufactured by Defendants Yamaha Motor Corporation, U.S.A. and Yamaha Motor Co., Ltd. (collectively, "Yamaha"). In her amended complaint, Mizrahi alleges one count based on Yamaha's negligence and the other based on strict liability. Both counts are based on alleged design defects and Yamaha's failure to warn. Yamaha submits it is entitled to summary judgment because (1) the WaveRunner's warnings are adequate as a matter of law; (2) Mizrahi cannot prove causation; (3) Mizrahi lacks admissible expert testimony to prove either her failure-to-warn or design-defect claims; and (4) the adequacy of the warnings preclude any design-defect claims as a matter of law. (Defs.' Mot., ECF No. 29.) In opposition, Mizrahi points to disputed issues of material fact regarding the adequacy of the warnings and causation. (Pl.'s Resp., ECF No. 32.) She also maintains that Yamaha's expert-witness arguments are premature. (*Id.*) Because the Court finds issues of material fact with respect to the adequacy of the warnings, the Court **denies** Yamaha's motion (**ECF No. 29**).

1. **Background**

The facts relevant to Yamaha's summary-judgment motion are as follows. Mizrahi—sixteen-years-old at the time—and her friend K.M. went for a ride on their friend N.B.'s WaveRunner on January 17, 2017. Mizrahi boarded the WaveRunner, operated by N.B., from a public dock, in the waters of Biscayne Bay, near her house. K.M. sat just behind N.B—then fifteen-years-old—and Mizrahi sat behind K.M., using the WaveRunner's third seat. The trio journeyed south, uneventfully, from Golden Beach, past Haulover, eventually stopping to swim at an island just south of Haulover.

After swimming, the three re-boarded the WaveRunner from the water, arranging themselves in the same order as on their outgoing trip. As they headed

north, back towards Golden Beach, the WaveRunner hit a wave, or a series of waves, which ultimately resulted—though it's unclear exactly how—in Mizrahi's sliding off the back of the WaveRunner. While Mizrahi was in the water, just behind the stern of the WaveRunner, N.B. was accelerating. The force of the water from the WaveRunner penetrated and punctured Mizrahi's rectum. She spent over two weeks in the hospital, undergoing a colectomy and emergency surgery to repair her torn rectum. Following the accident, Mizrahi had to wear a colostomy bag for eight months and has had to endure multiple surgeries. She ultimately missed the rest of her sophomore year in high school.

The WaveRunner had two warning labels on it: one on the glove box in front of the handlebars used by the operator and one towards the stern, just above the deck. The warning on the glovebox states "**WARNING**," in bold, all capital letters, with a day-glo orange banner in the background. The warning tells users, among other things:

> WEAR PROTECTIVE CLOTHING. Severe internal injuries can occur if water is forced into body cavities as a result of falling into water or being near jet thrust nozzle. Normal swimwear does not adequately protect against forceful water entry into rectum or vagina. All riders must wear a wet suit bottom or clothing that provides equivalent protection (See Owner's Manual).

(Defs.' Stmt. ¶ 14, ECF No. 30, 4.) The warning towards the stern provides similar information under another "**WARNING**" label, also printed on a day-glo background. It provides, in bullet-point format:

- Severe internal injuries can occur if water is forced into body cavities as a result of being near jet thrust nozzle.
- Wear a wetsuit bottom or clothing that provides equivalent protection.
- Do not board PWC if operator is applying throttle.

(Defs.' Stmt. at ¶ 19.) The owner's manual for the WaveRunner sets forth similar information and warnings. Below is a photograph of N.B.'s WaveRunner, showing the locations of the front and rear warnings (identified by Yamaha as the "Uniform Label" and the "Second Label," respectively):



(Defs.'s Resp. Stmt., Ex. B, ECF No. 33-2, 2.) The following shows a closeup of the section of the front label and outlines, in a red box, the warning excerpted above:



(Defs.' Stmt. at ¶ 15.) And the following is a closeup of a portion of the rear label, also excerpted above:



(Defs.' Stmt. at ¶ 19.)

Mizrahi, a self-proclaimed expert personal watercraft rider, was wearing Nike "Dri-FIT" shorts over her bathing suit at the time of the accident. The parties dispute whether Mizrahi "saw" the warnings on N.B.'s WaveRunner but both agree she did not read them that day. (Defs.' Resp. Stmt. ¶ 67, ECF No. 33, 3–4; Pl.'s Stmt. at ¶ 67, ECF No. 31, 7.) Despite not seeing the warnings on N.B.'s WaveRunner, Mizrahi testified she was nonetheless aware riders on personal watercraft are supposed to wear wetsuit bottoms or "clothing that provides equivalent protection." (Mizrahi Dep. 306:12–25, ECF No. 31-1, 14.) Mizrahi also testified her Dri-FIT shorts were "pretty thick" and that they are "the closest thing to a wetsuit." (*Id.* at 308:15; 310:9–10.) While N.B. acknowledged reading the warnings, he did not interpret the warnings to require wearing a neoprene wetsuit. (Defs.' Resp. Stmt. at ¶ 57; Pl.'s Smt. ¶ 57.)

### 2. Legal Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmovant, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present

competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 248 (citation omitted). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Bd. of Regents of Univ. of Ga.*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586.

   3. **Analysis**
   A. **There are genuine issues of material fact regarding the adequacy of the WaveRunner's warnings.**

Much of Yamaha's motion for summary judgment hinges on its contention that the WaveRunner's warnings "are adequate as a matter of law." (Defs.' Mot. at 9.) According to Yamaha, the "warnings in this case were accurate, clear, and unambiguous." (*Id.* at 11.) In support, Yamaha submits that the warnings were not only set forth twice in the owner's manual, but also on a highly visible label located beneath the handlebars used by the operator as well as on a label located at the rear of the WaveRunner, just above the boarding deck. (*Id.* at 11–12.) Yamaha also points to the warnings' use of varying letter types and fonts, including capitals and bolded letters, to relay the dangers of orifice injuries. (*Id.* at 12.) And the warnings graphically describe the physical consequences of failing to heed the warning: "Severe internal injuries can occur if water is forced into body cavities as a result of being near jet thrust nozzle." (*E.g.*, Defs.' Stmt. at ¶ 18.) Yamaha also maintains the warning's reference to "wetsuit bottom or clothing that provides equivalent protection" is unambiguous. This contention seems to be based on Mizrahi's testimony that: she knew the meaning of "wetsuit"; wetsuits are made of neoprene; she owned a wetsuit at the time of the accident; and she bought "wetsuit" shorts after the accident for safety. (Def.'s Stmt. at ¶ 33.) After careful consideration, the Court finds Yamaha's arguments fall wide of the mark.

To establish her failure-to-warn claim, Mizrahi "must prove that [Yamaha] (a) is a manufacturer or distributor of the product at issue, and (b) did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the manufacture and distribution." *Pinchinat v. Graco Children's Products, Inc.,* 390 F. Supp. 2d 1141, 1146 (M.D. Fla. 2005) (citing *Ferayorni v. Hyundai Motor Co.,* 711 So. 2d 1167, 1172 (Fla. 4th DCA 1998)). Adequacy, in turn, is assessed in light of the "typical" or reasonable" user.

*Porpora v. Louisville Ladder, Inc.*, 05-61008-CIV, 2006 WL 8431483, at *5 (S.D. Fla. June 16, 2006) (Altonaga, J.) ("A warning is adequate if it is communicated by means of positioning, lettering, coloring, and language that will convey to the typical user of average intelligence the information necessary to permit the user to avoid the risk and to use the product safely.") (quotation omitted). There is no dispute here that Yamaha was the manufacturer of the WaveRunner at issue in this case. Rather, the parties' dispute centers on the adequacy of the warning.

     As to the visibility of the warnings, the Court disagrees with Yamaha's assessment. First, Yamaha has not set forth any evidence regarding Mizrahi's access to the owner's manual for N.B.'s WaveRunner before riding it, on the day of her accident. After reviewing the record, the Court is hard pressed to conclude the warnings in the manual were reasonably accessible to Mizrahi, a passenger on the WaveRunner, out for a recreational afternoon ride with her friends. Second, whether the warning labels affixed by the handlebars and the rear of the craft she rode that day are sufficiently conspicuous to a passenger is a disputed issue of fact. Mizrahi has submitted a photograph from the day of the accident, showing that the labels would certainly not be visible to a third-seat passenger (Mizrahi, in the picture below) once the passenger has boarded:



(Pl.'s Stmt. of Facts, Ex. I (labels added by Mizrahi).) Mizrahi also testified that she didn't see the labels on N.B.'s WaveRunner before the accident. (Mizrahi Dep.

158:17–159:3, 168:9–17; ECF No. 31-1, 7, 9.)[1] Based on the photograph above (and the first picture reproduced in section 1, showing the WaveRunner without passengers (Pl.'s Stmt., Ex. J, ECF No. 31-10, 2)), it certainly appears that a passenger could possibly board the WaveRunner in such a way that neither the handlebar nor the stern warning labels would be visible. Although it is a somewhat close call—indeed Yamaha presents considerable evidence that supports a factual finding in its favor—considering the evidence in the light most favorable to Mizrahi, there is nonetheless a question of fact regarding the conspicuousness or visibility of the WaveRunner's warning labels. "[W]hether [the] displayed warnings would catch the attention of a reasonably prudent passenger" seems particularly well suited, in this case, for determination by a jury which "will be able to look at, in a common-sense way, whether the warnings were visible and in a location where a reasonably typical passenger could see them." *Ruggiero v. Yamaha Motor Corp., U.S.A.*, CV 15-49 (JBS/KMW), 2017 WL 1197755, at *11 (D.N.J. Mar. 31, 2017) (denying a defendant's motion for summary judgment in a similar case);[2] *c.f. Thomas v. Bombardier Recreational Products, Inc.*, 682 F. Supp. 2d 1297, 1301 (M.D. Fla. 2010) (finding a "jury issue as to the placement of the Warning" in another personal watercraft case where the court found the "Warning was arguably placed where only the driver could readily observe it"); *Fisher v. Bumbo Int'l Tr.*, 1:14-CV-22209-UU, 2014 WL 12026083, at *13 (S.D. Fla. Aug. 20, 2014) (Ungaro, J.) (denying baby-chair manufacturer's motion for summary judgment on a failure-to-warn claim because "there [we]re questions of fact regarding whether the warnings [we]re adequately prominent and conspicuous").

In any event, aside from visibility issues, which preclude summary judgment, the Court also has concerns regarding lingering questions of fact as to the clarity of the warning. After clearly and accurately describing the "severe internal injuries" that can result, the warning at the stern of the WaveRunner also directs riders to "[w]ear a wetsuit bottom or clothing that provides equivalent protection." (Defs.' Stmt. at ¶ 18.) The warning by the handlebars presents these same warnings and additionally admonishes that "[n]ormal swimwear does not

---

[1] An interesting wrinkle in these facts, however, is that Mizrahi also testified that, despite not seeing the warning on the WaveRunner she rode that day, she was nonetheless aware of the contents of the warning—based on prior experiences. (Mizrahi Dep. 306:24–25.) The relevance of this is discussed below, in section 3.B.

[2] The Court is aware, based on Yamaha's reply, that the court in *Ruggiero* ultimately determined, at trial, that the warning labels on the subject watercraft in that case were, as a matter of law, "clearly visible." (Defs.' Reply, ECF No. 34, 5–6 (citing the trial transcript).) While a similar result may ultimately ensue in this case, for now there is no indication that the layout of the watercraft and the labels in that case were the same as in this case. And so, determining this factual issue now would be premature based on the Court's assessment of the record presented here, on summary judgment.

adequately protect against forceful water entry into rectum or vagina." (*Id.* at ¶ 14.)

Both Mizrahi and N.B. testified that they believed wearing what they described as "Dri-FIT" shorts amounted to "equivalent protection." (Mizrahi Dep. at 308:12–24 (describing the Dri-FIT shorts as "pretty thick"); 310:9–10 (explaining she wore the shorts because they're "the closest thing to a wetsuit"); N.B. Dep. at 60:23–24 ("I thought a Dri-FIT would be enough. It's protective. So what's enough if that's not enough?"). This is sufficient evidence to get Mizrahi past summary judgment—despite the contrary evidence Yamaha presents supporting its competing contention that the warnings are unambiguous. *Cf. Hickerson v. Yamaha Motor Corp.*, 882 F.3d 476, 483 (4th Cir. 2018), *cert. denied sub nom. Hickerson v. Yamaha Motor Corp., U.S.A.*, 139 S. Ct. 105 (2018) ("[T]he question of the adequacy of the warning does not reach the jury unless evidence has been presented that the warning was inadequate . . . .") (affirming grant of summary judgment in favor of the defendant because the plaintiff did not "support [her] claims with *any* admissible evidence") (emphasis in original); *cf. Thomas*, 682 F. Supp. at 1301 (noting that a similar warning "clearly states . . . the specific injury that . . . could occur if precautions were not taken," but deeming the verbiage *on attire* an "instruction," as opposed to a warning, and therefore declining to opine on its clarity).[3] Ultimately, the Court agrees with Mizrahi and finds factual issues remain regarding the viability of her position that "[t]he instruction provides no guidance on the thickness or intended uses of an appropriate wet suit . . . ; nor does it provide any guidance on what materials constitute 'equivalent protection.'" (Pl.'s Resp. at 12); *see Valencia v. Sanborn Mfg. Co., Inc.*, 04-21416-CIV, 2005 WL 5957819, at *17 (S.D. Fla. Aug. 11, 2005) (Altonaga, J.) (noting "the sufficiency and reasonableness of a manufacturer's warnings are questions of fact which are best left to the jury unless the warnings are accurate, clear, and unambiguous") (quoting *Scheman-Gonzalez v. Saber Mfg. Co.*, 816 So. 2d 1133, 1139 (Fla. 4th DCA 2002)).

### B. Mizrahi's awareness of an ambiguous warning regarding other personal watercraft does not sever the causation chain.

Yamaha also argues that even if the Court were to identify questions of fact with respect to the adequacy of Yamaha's warning, summary judgment would nevertheless be appropriate because Mizrahi's prior knowledge of the dangers set forth in the warning precludes her ability to establish a causal connection between the warning and her injury. In support, Yamaha points to Mizrahi's testimony wherein she describes herself as an "expert" personal

---

[3] Neither party suggests this part of the warning, in the context of this case, should be excluded from the Court's analysis regarding ambiguity as was done in the *Thomas* case.

watercraft rider; says she has been on such watercraft more than a hundred times; states she had seen and read similar or identical labels on other personal watercraft; and affirms being aware that those warnings required all riders to wear a wetsuit bottom or clothing providing equivalent protection. (Defs.' Mot. at 13–14.) The Court finds Yamaha's argument to be a nonstarter: Mizrahi's awareness of an ambiguous warning cannot disrupt the causal chain here. *Cf. Bodie v. Purdue Pharma Co.*, 236 Fed. App'x 511, 519 (11th Cir. 2007) (recognizing a break in the "causal link" where a "prescribing physician had independent knowledge of the risk that [an] *adequate* warning should have communicated") (emphasis supplied).

The cases Yamaha relies on are inapplicable to this case, where there is evidence Mizrahi believed, although incorrectly, wearing Dri-FIT shorts over her bathing suit complied with Yamaha's warning. *Lockman v. S.R. Smith, LLC*, 405 Fed. App'x 471, 473 (11th Cir. 2010) (where a twenty-eight-year-old plaintiff in a products-liability case testified that he had complete knowledge of his parents' diving board and swimming pool where his spinal-cord injury occurred, knew how to dive safely, and had dived safely into that very pool on numerous occasions); *Kroon v. Beech Aircraft Corp.*, 465 F. Supp. 1223, 1225 (M.D. Fla. 1979), *aff'd,* 628 F.2d 891 (5th Cir. 1980) (likening the case before the court to one in which a pilot takes off with one gallon of gas—"[h]e knows . . . that he may be able to take off [but] when he gets up in the air he is going to crash" and, unlike here, "*there isn't much the manufacturer can do about it*") (emphasis added); *Hoffmann-La Roche Inc. v. Mason*, 27 So. 3d 75, 77 (Fla. 1st DCA 2009) (finding in defendant's favor on this issue where, unlike here, a physician testified he fully understood the risks associated with a drug but prescribed it to the patient anyway); *Talquin Elec. Co-op., Inc. v. Amchem Products, Inc.*, 427 So. 2d 1032, 1033 (Fla. 1st DCA 1983) (finding summary judgment appropriate where a plaintiff, unlike here, "is in fact warned by the label" and "the *uncontroverted* evidence [was] that [the] plaintiff [was] aware of the danger") (emphasis added).

Further, Mizrahi's awareness of other warnings provided on similar watercraft, but not the subject watercraft at issue here, is not necessarily determinative unless there is evidence showing she knew the warning applied to all personal watercraft equally. Yamaha, in its motion, has not pointed to any such evidence.

### C. Yamaha's expert-witness argument is premature and likely, at least with respect to her failure-to-warn claim, unavailing.

Yamaha next maintains Mizrahi will not be able to prove up her failure-to-warn and design-defect claims because her expert-witness testimony is inadmissible. To begin with, the sources Yamaha relies on for the proposition

that expert-witness testimony is required to support a failure-to-warn claim is not compelling. For example, in *Hall v. Sunjoy Indus. Group, Inc.*, the court concluded that "[a] claim that a warning was necessary and that the failure to warn rendered a product unreasonably dangerous and defective requires a warnings expert." 764 F. Supp. 2d 1297, 1303 (M.D. Fla. 2011). The issue prompting the court's pronouncement in that case revolved around whether *any* warning was necessary—not, as in this case, whether an *existing* warning is adequate. Accordingly, in *Hall*, the court's attention was directed towards whether the plaintiff could establish the "dangerous propensities" of the product at issue. 764 F. Supp. 2d at 1304. Those concerns are not at play, here, in the Court's determination regarding the adequacy of the warning itself. The decision in *Porpora* is similarly unavailing. 2006 WL 8431483, at *4. There the court's concern about the plaintiff's lack of expert testimony was founded on the plaintiff's failure to present any other evidence. *Id.* (noting the plaintiff has "fail[ed] to offer *any* evidence" of either a design defect or a failure to warn). In sum, the Court disagrees with Yamaha that Mizrahi will be unable to establish her failure-to-warn claim without an expert.

On the other hand, Mizrahi does not dispute Yamaha's contention that she needs to present expert-witness testimony to establish her design-defect claim. This argument, however, is premature as no ruling has yet issued regarding Yamaha's *Daubert* motion regarding her design-defect expert and Yamaha does not otherwise present any analysis in its motion for summary judgment regarding the inadmissibility of this witness's testimony.[4]

### D. Yamaha is not entitled to summary judgment on the basis of its contention that an adequate warning precludes a design-defect claim.

Lastly, Yamaha maintains that an adequate warning renders a product not defective under Florida law, therefore precluding Mizrahi's design-defect claim. For starters, this argument is moot because the Court has found issues of material fact with respect to Mizrahi's failure-to-warn claim. Additionally, the Court notes that Yamaha's insistence that an adequate warning forecloses a design-defect claim is based on comment j to section 402A of the Restatement (Second) Torts. According to the analysis in comment j, "[w]here warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Restatement (Second) of Torts § 402A (1965). The Court is not persuaded, at least at this stage of the litigation, by Yamaha's argument that this concept necessary controls in this case. To the extent this issue crops up again, however, in the drafting of jury instructions for

---

[4] If Mizrahi's expert is ultimately excluded, Yamaha may raise this issue anew at that time.

this case, for example, the parties may re-raise the issue and the Court may reconsider its position.

### 4. Conclusion

Accordingly, the Court **denies** Yamaha's motion for summary judgment. (**ECF No. 29**).

**Done and ordered**, at Miami, Florida, on June 20, 2019.

_____
Robert N. Scola, Jr.
United States District Judge